IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01141-RBJ-CBS

THOMAS A. STOCKS, and
MICHELLE R. STOCKS,
    Plaintiffs,
v

CITY OF AURORA,
DANIEL J. OATES,
BRADLEY GULLICKSRUD,
DANIEL WITTENBORN,
SCOTT COOPER,
STEVEN W. STANTON,
DANIEL JOHNSON,
JOSH MOHLMAN,
CHRISTOPHER POPPE,
JAD LANIGAN,
PATRICK SMITH, and
JOSEPH DAGOSTA,
    Defendants.

## RECOMMENDATION REGARDING DEFENDANTS' PARTIAL MOTION TO DISMISS

Magistrate Judge Shaffer

    This matter comes before the court on Defendants' Partial Motion to Dismiss the Complaint (doc. #24), filed on September 4, 2013. The pending motion seeks to dismiss the state law claims asserted against all the Defendants, pursuant to Fed. R. Civ. P. 12(b)(1). Defendants also move to dismiss the constitutional claims brought against the City of Aurora, Daniel Oates, and Patrick Smith, pursuant to Fed. R. Civ. P. 12(b)(6). The Stocks filed a Opposition to the Motion to Dismiss (doc. #31) on September 10, 2013, and Defendants followed with a Reply in Support of Partial Motion to Dismiss the Complaint (doc. #32) on September 23, 2013. The Stocks filed their "Rejoinder" (doc. #33) on October 24, 2013. The court has

carefully considered the motion and related briefing, the comments offered by the parties during a hearing on October 24, 2013, the entire case file, and applicable case law. For the following reasons, I recommend that the pending motion be granted.

## PROCEDURAL BACKGROUND

Thomas and Michelle Stocks filed their original *pro se* Complaint on April 30, 2013, asserting constitutional and state law claims against the City of Aurora, Daniel Oates, the Chief of the Aurora Police Department, and several members of that Department. The Stocks' claims arose out of events that occurred on May 24, 2011. On that day, Mr. Stocks' car was stopped by Aurora police officers, he was arrested, and his car and other personal items were seized. Later that same day, officers proceeded to Springhill Property, a business owned by the Stocks, where they seized other property and questioned Ms. Stocks, allegedly without providing Miranda warnings.

The Stocks filed an Amended Complaint (doc. #8) on June 11, 2013, in response to an Order requiring them to cure certain pleading deficiencies "if they wish to pursue their claims." Magistrate Judge Boland issued another Order (doc. #10) on June 12, 2013, noting that Plaintiffs still "fail[ed] to assert how each defendant personally participated in the alleged violations." The Stocks were further advised that "[a] named defendant may not be held liable merely because of his or her supervisory position," and that a "supervisor is only liable for constitutional violations that they cause." The Stocks filed their Second Amended Complaint (doc. #20) on August 4, 2013. That pleading asserts three claims under 42 U.S.C. § 1983 and five claims under Colorado common law. The First Claim asserts a "Violation of Civil Rights Pursuant to 42 U.S.C. § 1983" and the Fourth, Fifth and Fourteenth Amendments. The Second Claim also is brought under § 1983 and asserts a "Failure to Implement Appropriate Policies, Customs and Practices" on the part of Chief Oates and, by implication, the City of Aurora. The Third and Fourth Claims seek relief

pursuant to § 1983 based on allegations of excessive force and false imprisonment, respectively. The Fifth, Sixth, Seventh and Eighth Claims assert tort claims for negligence, negligent supervision, conversion, and assault. Defendants' motion for partial dismissal is directed to Claims Two, Five, Six, Seven and Eight.

## ANALYSIS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court lacks subject matter jurisdiction. The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992)

> Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, No. 07-cv-01250-WYD-KMT, 2008 WL 4277748, at *3 (D. Colo. Sept. 16, 2008) (internal quotation marks and citations omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.*

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. . . . . Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, No. 08-cv-02794-PAB-MJW, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citations omitted).

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).  Because the Stocks are appearing *pro se*, the court "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir.

2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as the *pro se* litigant's advocate); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in that absence of any discussion of those issues").

*A.  Dismissal of State Law Claims*

Defendants have moved to dismiss the Plaintiffs' state law claims for negligence (Claim Five), negligent supervision (Claim Six), conversion (Claim Seven) and assault (Claim Eight), arguing that the Stocks failed to comply with the notice requirement incorporated in the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-109.

> As of May 24, 2011, the date of the alleged violations, the CGIA required that
>
> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

*See* C.R.S. § 24-10-109(1). *Cf. City and County of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007) ("The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit."); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 298 (Colo. App. 2009) (noting that "[t]he plaintiff must demonstrate strict compliance with the time requirement of the notice" mandated by the CGIA). *See also Fortner v. City of Colorado Springs,* No. 06-cv-02148-BNB-MEH, 2012 WL 1949000, at *3 (D. Colo. May 30, 2012) (holding that "[c]ompliance with the [CGIA's] notice provision implicates the court's subject

matter jurisdiction").

In their Opposition to the Motion to Dismiss (doc. #31), the Stocks state that a letter dated November 21, 2011 was sent "to defendants apprising them of plaintiffs plan to seek judicial refuge for the wanton violation of their constitutional rights." Plaintiffs maintain that their November 21, 2011 letter "satisfied the statute." Unfortunately, the Stocks' notice was untimely. Given the nature of the alleged violations, the Stocks plainly were aware of their injuries as of May 24, 2011, when Mr. Stock was arrested, officers entered the Stocks' business property and their personal property was seized. *See, e.g.,City of Lafayette v. Barrack*, 847 P.2d 136, 139 (Colo. 1993) (holding that once the underlying basis of the claim is known or should have been known, an aggrieved party may not wait to give notice until all elements of the claim mature). Commencing on May 24, 2011, the 180-day notice period would have expired on November 20, 2011. The Stocks' letter sent on or after November 21, 2011 was untimely.[1] For that reason, Plaintiffs' state law claims must be dismissed without prejudice for lack of subject matter jurisdiction.

B.     *Dismissal of Constitutional Claims against Defendants City of Aurora and Oates*

The pending motion to dismiss argues that the § 1983 claims against the City of Aurora and Chief Oates fail to properly allege actionable constitutional violations and must be dismissed pursuant to Rule 12(b)(6). I agree.

In the Second Amended Complaint, the Stocks state "as Background," that this action is brought

---

[1] I also note that the available record is silent as to how this letter was delivered to the City of Aurora. That omission is significant as § 24-10-109(3) also states that "notice shall be effective upon mailing by registered or certified mail, return receipt requested, or upon personal service." *Cf. Regional Transportation District v. Lopez*, 916 P.2d 1187, 1189-91 (Colo. 1996) ("Although nothing in the [CGIA] precludes service by regular mail, the plain terms of the statute do not provide that posting a notice by regular mail is a valid method of establishing the effective date of service. . . . In sum, the date of mailing by regular mail has no legal significance. It is the date of receipt which governs whether notice sent by regular mail is timely."). As the parties with the burden of establishing subject matter jurisdiction, the Stocks must allege sufficient facts to sustain their burden of showing timely notice under the CGIA.

6

against Chief Oates and the City of Aurora for their "failure to properly train and supervise" the other individual Defendants. As discrete "Facts," paragraph 11 of the Second Amended Complaint alleges that "[d]efendants had no adequate training regarding the search and seizure, investigatory stop, or reasonable use of force." The Second Amended Complaint further alleges, in paragraph 14, that "[t]he defendant (chief of police) failed to adequately supervise the Defendants who conducted the illegal search and seizure." Finally, Claim Two alleges a violation of § 1983 based on Defendant Oates' alleged failure "to adequately train and supervise" members of his Department, as well as his "implicit or explicit" adoption and implementation of "careless and reckless policies, customs or practices that included . . . allowing employees of the Aurora Police Department to wantonly disregard the due process in conducting search and seizure." *See* Second Amended Complaint, at ¶¶ 26-28. There are no allegations that Defendant Oates personally participated in any search or seizure involving the Stocks.

Section 1983 does not allow municipalities to be held vicariously liable for the unlawful acts of their employees under *respondeat superior* principles. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978); *Havens v. Johnson*, Nos. 09-cv-01380-MSK-MEH, 11-cv-00490-MSK-MEH, 2012 WL 871195, at *6 (D. Colo. Mar. 13, 2012). Municipalities may be liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. *Monell*, at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (internal quotation marks and citations omitted). "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said

to be those of the municipality." *Id.* at 403-04.

Inadequate training or supervision may serve as the basis for § 1983 liability only where the failure to train or supervise equates to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), *abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S 825 (1994). A plaintiff cannot establish liability unless he or she can demonstrate that the failure to supervise or provide specific training has a causal nexus with the alleged injuries and that the lack of supervision or specific training "can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Giles v. Davis*, 427 F.3d 197, 207 n. 7 (3d Cir. 2005) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). Thus, in order to succeed on such a claim, it must be proven that the allegedly deficient training or supervision actually caused the injury. *Reitz*, 125 F.3d at 145 (citing *City of Canton*, 489 U.S. at 391).

Moreover, the alleged failure to train or supervise must be accompanied by deliberate indifference to the rights of the plaintiff. *City of Canton*, 489 U.S. at 388. *See also Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."); *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997) ("a plaintiff who seeks to establish municipal liability . . . must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.") (internal quotation marks and citation omitted); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) ("municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations omitted).

It is understood that a defendant may not be held individually liable for constitutional violations merely because he or she holds a supervisory position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). A supervisor's liability under § 1983 "must be predicated on the supervisor's deliberate indifference" and a plaintiff "must show that an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). "[A] supervisor . . . may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Davidson v. Kansas*, No. CIV. A. 99-3235-KHV, 2001 WL 533207, at *4 (D. Kan. Mar. 13, 2001) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)). Stated differently, "[s]upervisory liability exists even without personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (holding that the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act).

The Tenth Circuit recently addressed the issue of supervisor liability under § 1983 in *Arocho v. Nafziger*, No. 09-1095, 2010 WL 681679, at *3 n. 4 (10th Cir. Mar. 1, 2010), noting that "the basic concept of . . . supervisory liability itself may no longer be tenable" in light of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Tenth Circuit cited the Supreme Court's discussion of supervisory liability:

> Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose . . . liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.*, at *10 (quoting *Ashcroft*, 556 U.S. at 677)).

Here, the Second Claim alleges in conclusory fashion that Defendant Oates, by virtue of his supervisory status, was in a position to establish policies or practices that would have prevented or corrected the violations the Stocks claim they suffered.  Plaintiffs have not alleged that Defendant Oates knew of or participated in the actions taken by members of his Department.  "It is not enough to establish that the official should have known of the risk of harm."  *Smith v. Ward*, No. CIV-07-413-W, 2009 WL 1652267, at *6  (W.D. Okla. Feb. 24, 2009) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)).  To withstand a motion to dismiss, a plaintiff is required to offer more than conjectural allegations or sweeping generalizations.  The Supreme Court emphatically made this point in *Ashcroft*, 556 U.S. at 679:

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

Without the requisite factual allegations, the Second Claim seeks to impose liability under a theory of *respondeat superior*, which is not sustainable under § 1983.  *Cf. Smith v. Maschner*, 899 F.2d 940, 950-51 (10th Cir. 1990).  *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[s]upervisory status alone does not create § 1983 liability").

In sum, the Stocks' "failure to train and supervise" claim against the City of Aurora and Chief Oates consists of nothing more than conclusory allegations.  There are no well-pled facts that demonstrate specific deficiencies in the training or supervision of any Aurora employees or police officers.  Even accepting as true the allegations against the individual officers, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability" because a single event cannot establish a custom or a persistent practice.  *Hill v. Unnamed Arapahoe County Detention Officers*, No. 11-cv-00835-PAB-KMT, 2012 WL

899278, at *6 (D. Colo. Mar. 15, 2012) (quoting *Butler v. City of Normal*, 992 F.2d 1053, 1055 (10th Cir. 1993)).  Accordingly, the Second Claim must be dismissed for failure to state a claim upon which relief can be granted.  For the same reasons, Defendants City of Aurora and Oates should be dismissed from this action.

C.       *Dismissal of Constitutional Claims Against Defendant Smith*

To prevail under § 1983, the Stocks must allege facts that plausibly demonstrate that the each of the named individual Defendants personally participated in the alleged constitutional violations.  *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("[Section] 1983 imposes liability for a defendant's own actions – personal participation in the specific constitutional violation complained of is essential.").  To establish personal participation, the plaintiff must show that the defendant caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  An individual personally participates in the deprivation of a constitutional right if (a) he participates directly in the constitutional violation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent.  *See Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985).

The only "factual" allegation in the Second Amended Complaint directed towards Defendant Smith states that "Defendant Patrick Smith refused to return property or give any paperwork on seized property." *See* Second Amended Complaint, at ¶ 9.  Defendant Smith is not alleged to have participated in the events of May 24, 2011 or the seizure of the Stocks' property.  To the extent the Second Amended Complaint alleges an unlawful seizure of that property, that Fourth Amendment violation already occurred before Defendant Smith was asked to return Plaintiffs' property.[2]  *Cf. MacArthur v. San Juan County*, 416 F. Supp. 2d 1098,

---

[2]Given the paucity of facts in the Second Amended Complaint directed toward Defendant Smith, the

1150 (D. Utah 2005) (noting that "[w]here an official becomes aware of a constitutional violation only after the fact, he or she cannot be held liable for the violation under § 1983 because the violation has already occurred and the official played no causal role in it."). *See also Richardson v. Quitman County, Georgia*, 912 F. Supp. 2d 1354, 1380 (M. D. Ga. 2012) (holding that plaintiffs had not established any causal connection the defendant's actions and constitutional violations that had already occurred). As Defendant Smith's after-the-fact contact with the Stocks, which is all the Second Amended Complaint describes, does not rise to the level of a constitutional violation, he is properly dismissed from this action.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants' Partial Motion to Dismiss the Complaint (doc. #24) be GRANTED, and that Defendants City of Aurora, Oates, and Smith be dismissed from this action without prejudice. I further recommend that Plaintiffs' Second Claim for relief be dismissed, without prejudice, for failure to state a claim for relief. Finally, I recommend that Plaintiffs' state law claims (Five, Six, Seven and Eight) be dismissed without prejudice based on the Stocks' failure to comply with the mandatory notice requirement imposed under the Colorado Governmental Immunity Act. This action should proceed only as to Claims One, Three and Four, and Defendants Gullicksrud, Wittenborn, Cooper, Stanton, Johnson, Mohlman, Poppe, Lanigan, and Dagosta.

**Advisement to the Parties**

Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the

---

court is left to guess why Defendant Smith declined to return the Stocks' property. However, the court also is aware that the Stocks currently are the subject of criminal proceedings set for trial later this year. *See* Defendants' Notice of Related Cases (doc. #23). Those pending prosecutions may explain why some, or all,

United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

   DATED this 28th day of October, 2013.

                              BY THE COURT:

                              s/ Craig B. Shaffer
                              United States Magistrate Judge

---

of Plaintiffs' property was retained by the Aurora Police Department.