IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01141-RBJ-CBS

THOMAS STOCKS, and
MICHELLE STOCKS,

      Plaintiffs,

v.

CITY OF AURORA,
DANIEL J. OATES,
BRADLEY GUILLICKSRUD,
DANIEL WITTENBORN,
SCOTT COOPER,
STEVEN W. STANTON,
DANIEL JOHNSON,
JOSH MOHLMAN,
CHRISTOPHER POPPE,
JAD LANIGAN,
PATRICK SMITH, and
JOSEPH DAGOSTA,

      Defendants.

---

ORDER ADOPTING IN PART THE REPORT AND RECOMMENDATION AND
GRANTING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS

---

This matter is before the Court on defendants' partial motion to dismiss. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). The motion has been fully briefed and is accompanied by a thorough and thoughtful Report and Recommendation from Judge Shaffer that the motion be granted. For the reasons explained below, I largely adopt Judge Shaffer's recommendation and grant in part the motion to dismiss.

I. **Factual Background**

On May 24, 2011, officers from the Aurora Police Department stopped Mr. Thomas Stocks while he was driving his Prius.[1] [ECF No. 20 at 4.][2] Mr. Stocks was arrested during that stop, and items were seized from his car. *Id.* Later that same day officers arrived at a business owned by Mr. and Ms. Stocks where they allegedly entered without a warrant, seized additional property, and questioned Ms. Michelle Stocks without providing *Miranda* warnings. *Id.* The Stocks claim that at some later date they attempted to recover the items that were seized--$1,200 in cash, a GPS unit, a pistol, and a camera—but one of the defendants, Officer Patrick Smith, "refused to return property or give any paperwork on seized property." *Id.* at 5. Finally, the Stocks allege that a series of negative repercussions flowed from the search and seizure including "loss of economic resources" and "severe emotional distress." *Id.* at 5-6.

II. **Procedural Background**

On November 21, 2011, the Stocks mailed a letter to the Aurora City Attorney's Office and the Aurora Police Department stating that the Stocks intended to sue the recipients for "violat[ing] their U.S. and Colorado constitutional rights by conducting unwarranted searches and seizure of property." [ECF No. 35.] The letter went on to detail their financial losses and to claim that the constitutional violations were "willful and wanton." *Id.*

---

[1] The legal issues raised in this partial motion to dismiss are relatively narrow. The defendants ask only that the Court rule on the sufficiency of the pleadings in regard to whether the City and Chief Oates failed to implement policies or practices that would have better protected the plaintiffs against alleged deprivations of constitutional rights and also whether the plaintiffs provided sufficient notice under the Colorado Governmental Immunity Act ("CGIA"). Therefore the Court's recitation of the facts that led to the allegedly unconstitutional search and seizure is brief.

[2] The Amended Complaint is not paginated. The Court's citations will use the pagination supplied by the ECF filing system.

The Stocks then filed a *pro se* civil suit against the City of Aurora, Chief of Police Daniel Oates, and several individual officers on April 30, 2013. [ECF No. 1.] Magistrate Judge Boyd Boland issued an order directing the plaintiffs to use the proper forms and include additional required information. [ECF No. 5.] Plaintiffs filed an amended complaint on June 11, 2013. [ECF No. 8.] After receiving the amended complaint, Judge Boland issued a second order directing the plaintiffs to correct certain deficiencies in their amended complaint and specifically advising them that they must plead facts indicating personal participation by each named defendant in the allegedly unconstitutional actions. [ECF No. 10.] Plaintiffs filed a third version of their complaint on August 14, 2013. [ECF No. 20.] In this latest iteration, the complaint raises four causes of action brought under 42 U.S.C. § 1983 for violations of federal constitutional rights and four state common law tort claims. The claims are as follows:

- Claim One (Deprivation of Fourth, Fifth, and Fourteenth Amendment Rights in Violation of 42 U.S.C. § 1983)
- Claim Two (Failure to Implement Appropriate Policies, Customs, and Practices in Violation of 42 U.S.C. § 1983)
- Claim Three (Use of Excessive Force in Violation of 42 U.S.C. § 1983)
- Claim Four (False Imprisonment in Violation of 42 U.S.C. § 1983)
- Claim Five (Negligence)
- Claim Six (Negligent Supervision)
- Claim Seven (Conversion)
- Claim Eight (Assault)

The case was briefly reassigned to Judge Wiley Daniel of this Court, at which point pursuant to D.C.Colo.LCivR 7.5 defendants notified the Court that the Stocks are currently

facing criminal prosecution in Arapahoe County in connection with the events underlying their civil suit. [ECF No. 23 citing *People v. Thomas Archie Stocks*, Case No. 2011CR1062 (Arapahoe Cnty. Ct.) and *People v. Michelle Rosales Stocks*, Case No. 2011CR1150 (Arapahoe Cnty. Ct.).] Concurrent with that notice, defendants filed a partial motion to dismiss Claims Two, Five, Six, Seven, and Eight based on Fed. R. Civ. P. 12(b)(1) and (6).[3] [ECF No. 24.]

Judge Daniel returned the case, and it was reassigned to me. I, in turn, referred the case to Magistrate Judge Craig B. Shaffer. On October 28, 2013 after full briefing by the parties, Judge Shaffer issued a recommendation that the motion be granted. [ECF No. 36.] It is this recommendation, the Stocks' objections to the recommendation, and the underlying partial motion to dismiss that are before this Court.

### III. Discussion

#### a. Standard of Review.

Following the issuance of a magistrate judge's recommendation on a dispositive matter the district court judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.* Because Mr. and Ms. Stocks objected to Judge Shaffer's Report and Recommendation, the Court therefore reviews the recommended disposition de novo.

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v.*

---

[3] I note that defendants also raise Fed. R. Civ. P. 12(b)(4) and (5) in their motion, but never explain the basis for their arguments on insufficient process or service of process. Accordingly, I do not address those issues.

*Twombly*, 550 U.S. 544, 555, 570 (2007).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  Allegations that are purely conclusory need not be assumed to be true.  *Id.* at 1951.

Because the Stocks represent themselves *pro se*, the Court "review[s their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### b. <u>Dismissal of State Law Claims Against All Defendants.</u>

The defendants first urge the dismissal of all state law claims (Claims Five, Six, Seven, and Eight) against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  They argue that Mr. and Ms. Stocks failed to comply with the notice provisions of the Colorado Governmental Immunity Act ("CGIA").  They note that the notice provisions are jurisdictional, and failure to comply imposes a jurisdictional bar on subsequent litigation.  Defendants stipulate that the notice they received was timely and sent by the appropriate means, but argue the contents were deficient.

Generally a federal court possessing federal question jurisdiction over a case pursuant to 28 U.S.C. § 1331 may exercise supplemental jurisdiction over state law claims "derive[d] from a common nucleus of operative fact."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367(a).  But just because a federal court decides to exercise supplemental jurisdiction over state law claims does not absolve plaintiffs of the duty to comply

5

with applicable state statutes governing those claims. For example, the CGIA imposes certain notice requirements on anyone seeking to file a tort claim against public entities in Colorado or their employees. Specifically the law requires

> [a]ny person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

C.R.S. § 24-10-109(1); *see also City and County of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007) ("The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit."). This jurisdictional bar exists even where the claims are brought in federal court under supplemental jurisdiction. *Maestas v. Lujan*, 351 F.3d 1001, 1013-14 (10th Cir. 2003) ("The statutory notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction.") (footnote and citation omitted).

> Statutory notice must contain
>
> (a) The name and address of the claimant and the name and address of his attorney, if any; (b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; (c) The name and address of any public employee involved, if known; (d) A concise statement of the nature and the extent of the injury claimed to have been suffered; (e) A statement of the amount of monetary damages that is being requested.

C.R.S. § 24-10-109(2). The statement of the factual basis of the claim "must put the public entity on notice of the theory on which a forthcoming lawsuit will rest." *Miller v. Mountain*

6

*Valley Ambulance Serv., Inc.*, 694 P.2d 362, 364 (Colo. Ct. App. 1984). However, "[i]n contrast to the jurisdictional 180–day filing requirement, the adequacy of the notice's contents is subject to a substantial compliance standard. . . ." *Crandall*, 161 P.3d at 632 n.5 (citation omitted). "'Substantial compliance' means that the notice is timely, in writing, and evidences a good faith effort to include each item of information set out in § 24-10-109." *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1031-32 (D. Colo. 2000), *aff'd*, 13 F. App'x 837 (10th Cir. 2001) (quoting *Cassidy v. Reider*, 851 P.2d 286, 288 (Colo. Ct. App. 1993)). "The CGIA does not require the notice of legal grounds or claims for relief." *Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1195 (D. Colo. 1999) *aff'd*, 6 F. App'x 683 (10th Cir. 2001).

Here, the Stocks timely filed a notice of intent to sue with the City of Aurora,[4] and the notice appears substantially to comply with the statutory requirements. Defendants point to *Miller*'s holding that the statement of the factual basis "must put the public entity on notice of the theory on which a forthcoming lawsuit will rest" and suggest that the Stocks never made any mention of negligence, negligent supervision, conversion, or assault in their notice. *Miller*, 694 P.2d at 364. At first blush, *Miller* might appear to require a high degree of legal sophistication on the part of the notice drafter. However the facts of *Miller* demonstrate otherwise.

In *Miller*, a man died after receiving an electric shock from power lines on the roof of the apartment building where he was employed. *Id.* at 363. His family brought wrongful death

---

[4] Judge Shaffer's Report and Recommendation recommended dismissal of the state law claims because "the Stocks' notice was untimely." [ECF No. 36 at 6.] However in its brief in opposition to plaintiffs' objections to that Report, the defendants "stipulate that the letter was sent within the statutory deadline by an appropriate means." [ECF No. 39 at 7 n.3 (citing *Matthews v. City and County of Denver*, 20 P.3d 1227, 1228 (Colo. Ct. App. 2000).] This Court appreciates greatly counsel's candor and professionalism in bringing this issue to its attention. Defendants maintain that Plaintiffs failed to comply with the notice requirements because the letter "does not contain a statement of any factual bases for the asserted tort claims, a statement of the nature and extent of any injuries suffered from the alleged torts, or a statement of monetary damages resulting from any alleged tort." *Id.*

claims against the city defendant ambulance service on a theory of negligence. *Id.* The notice, however, never mentioned the ambulance service or emergency medical care administered to the decedent. *Id.* Rather it alleged negligence on the part of the city in its routing and operation of the power lines that injured the decedent. *Id.* At the time notice was filed, electrocution was believed to be the cause of Mr. Miller's death. *Id.* However, after an autopsy revealed that Mr. Miller died as a result of aspirating gastric material, the plaintiffs initiated their lawsuit on a theory that he received negligent medical care while being transported to the hospital. *Id.* The plaintiffs neither amended their previously filed notice nor sent a new notice on the basis of this new theory. *Id.*

The *Miller* court was not, therefore, holding that the statute requires exhaustive identification of legal theories underlying the forthcoming lawsuit. Rather the notice need only put the defendant on notice of the factual basis for such a lawsuit. It was the fact that the Millers identified a totally different cause of their injury—and one that likely never would have alerted the city to possible negligence claims directed at its ambulance service—that made their notice deficient.

The instant case is more akin to *Katz*, where "plaintiff's notice, although not a model of clarity," adequately informed the defendant that the plaintiff planned to bring charges related to the factual basis described in the notice. *Katz*, 85 F. Supp. 2d at 1032. In a letter titled "Notice of Intent to Sue (C.R.S. 24-10-109)," the Stocks explained that they intended to sue the City of Aurora and its officers for "violat[ing] their U.S. and Colorado constitutional rights by conducting unwarranted searches and seizure of property." [ECF No. 35.] Moreover, the letter details the alleged financial impact of defendants' action—"between $80,000 and $200,000, as the contracting businesses were shut down during peak season." *Id.*

8

Together these statements suggest a good faith effort to put the City on notice of forthcoming claims of negligence. While the letter did not mention any of the underlying state tort claims that could have sprung out of this factual basis, defendants were given notice of the "basis of the claim" and could have adequately prepared to defend themselves against not only the federal claims but also corollary state law claims.

### c. Dismissal of Federal Constitutional Claims Against City of Aurora and Chief Oates.

Defendants ask the Court to dismiss the federal claims against the City and Chief Oates due to inadequate pleading from Mr. and Ms. Stocks. Judge Shaffer and I both agree that the plaintiffs failed to state a claim against these defendants.

Municipalities cannot be held vicariously liable under the theory of *respondeat superior*. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather such liability attaches only where the constitutional deprivation results from a government's policy or custom. *Id.* at 690-91; *see also Bryan Cnty. v. Brown*, 520 U.S. 387, 403 (1997) ("[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury.") (internal quotation marks and citations omitted); *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

Inadequate training or supervision may serve as a basis for liability under Section 1983 only where accompanied by deliberate indifference to the rights of the plaintiff. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), *abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Deliberate indifference may exist when the municipality has "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."

*Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir.1998)). Pointing to general deficiencies in a training program is not enough to suggest liability. *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999).

Similarly, supervisors are cannot be held liable under § 1983 by virtue of *respondeat superior*. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) ("Section 1983 does not authorize liability under a theory of respondeat superior.") (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). The supervisor must have "subject[ed], or cause[d] to be subjected," the claimant to a deprivation of rights. 42 U.S.C. § 1983. Plaintiffs must establish three elements in order to impose liability on a supervisor: "(1) personal involvement; (2) causation; and (3) state of mind." *Schneider*, 717 F.3d at 767. In proving these elements, a plaintiff "must show that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks omitted).

The Stocks apparently concede that the City may only be held liable if a policy or custom caused their constitutional injury. [ECF No. 37 ¶¶ 1-2 & 11-12.] Yet nowhere in their papers do the Stocks identify a specific policy or custom that led to their injury. I agree with Judge Shaffer's opinion that the "failure to train and supervise" claim "consists of nothing more than conclusory allegations." [ECF No. 36 at 10.]

The Stocks offer nothing to rebut that conclusion in their objections to Judge Shaffer's Recommendation. The only specific reference to any department policy in their objections is a reference to a letter from Chief Oates to officers that states "I know that all of you are well trained on our policy of maximum restraint in the use of force." *Id.* ¶ 4. The Stocks also

10

attached a news article suggesting that the department does not properly handle complaints and internal investigations. *Id.* at 10-14. But if taken as true, the article identifies a deficiency *unrelated* to their claims. The Stocks are not complaining of injuries related to the use of force. To prevail at this stage, the Stocks must have identified a deficient policy or custom related to the execution of searches and seizures. They fail to allege any facts regarding such a deficiency.

Regarding Chief Oates, the Stocks claim he had "personal knowledge of the abuses of his men." *Id.* ¶ 4. Even if that conclusory statement is true, it fails to allege an affirmative causal link between Chief Oates's actions or inactions and the actions of the officers who searched the Stocks' property.

Ultimately the Stocks' allegations do nothing more than attempt to impose liability on the City of Aurora and Chief Oates for the actions of individual police officers. This type of pleading—without some facts suggesting a policy of deliberate indifference—cannot survive a motion to dismiss. *Cf. Moss*, 559 F.3d at 1169 (finding no municipal liability for failure to train where the plaintiffs "fail[ed] to allege any conduct by [the sheriff or county officials] apart from the conduct" of the individual deputies); *Rhoden v. City of Lakewood*, No. 11-cv-01734-PAB-BNB, 2013 WL 878680, at *4 (D. Colo. Mar. 8, 2013) (granting a motion to dismiss where plaintiffs relied solely on the actions of two officers and failed to identify a specific policy, custom, or practice of the department or facts suggesting that the officers took action pursuant to direction from the department).

While defendants' motion requests dismissal of "all claims" against these defendants, [ECF No. 24 at 7], their briefing does not address the question of whether plaintiffs' *state law* claims are adequately pled. The complaint alleges the tort claims against unspecified defendants. Theoretically the City of Aurora and Chief Oates could be held liable for each tort (negligence,

negligent supervision, assault, and conversion) on theories of direct and vicarious liability.[5] There are a slew of facts alleged by the complaint, and the defendants fail to identify any obvious deficiencies in those pleadings. Therefore I decline to dismiss those claims under Rule 12(b)(6).

### d. **Dismissal of All Claims Against Defendant Smith.**

The Stocks also bring claims against Officer Smith for "refus[ing] to return property or give any paperwork on seized property." [ECF No. 20 ¶ 9.] Defendants argue that these claims "lack factual support" and ought to be dismissed. [ECF No. 24 at 13.] Judge Shaffer agrees, and so do I.

Adequate pleading under Section 1983 requires plaintiffs to allege facts that plausibly demonstrate that each of the named defendants personally participated in the alleged constitutional violation. *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("[Section] 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") And establishing personal participation requires the plaintiff to show that the defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Officials who played no part in an alleged constitutional violation cannot be held liable for the violation under Section 1983. *See MacArthur v. San Juan Cnty.*, 416 F. Supp. 2d 1098, 1150 (D. Utah 2005) ("Where an official becomes aware of a constitutional violation only after the fact, he or she cannot be held liable for the violation under § 1983 because the violation has already occurred and the official played no causal role in it.").

---

[5] By contrast, the only alleged torts that logically might apply to defendant Smith are negligence and conversion under a theory of direct, but not vicarious, liability. Because the pleadings offer absolutely no facts in support of liability for defendant Smith, as explained below, I grant defendants' motion to dismiss all the claims against him pursuant to Rule 12(b)(6).

Plaintiffs do not allege that Officer Smith participated in the search or seizure at issue in this case. Those events took place before plaintiffs asked Officer Smith to return their property. Moreover, as the defendants point out, the Stocks have never "allege[d] that Plaintiffs were entitled to the return of any property that was seized, that the property was wrongfully withheld, that paperwork was required by law, or that refusal to return the property otherwise constituted a violation of any of Plaintiffs' constitutional rights." [ECF No. 32 at 7.] The Stocks do not dispute this conclusion in their objections.[6]

Not only is there no allegation of personal participation in any alleged constitutional violation, but there are no facts alleged that could plausibly support Officer Smith's liability under plaintiffs' state law claims. For example, there are no facts in the Amended Complaint or briefing suggesting that the Stocks were entitled to return of their property. *Cf. Byron v. York Inv. Co.*, 296 P.2d 742, 745 (Colo. 1956) ("Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another."). And there are no facts suggesting that Officer Smith owed a duty to the Stocks that he subsequently breached. *Cf. Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004) ("In cases involving negligent torts, a common law prima facie cause of action requires the proof of four elements: a plaintiff must show that first, the defendant owed a legal duty of care; second, the defendant breached that duty; third, the plaintiff was injured; and fourth, the defendant's breach caused that injury.").[7] Therefore all claims against Officer Smith are dismissed with prejudice.

---

[6] The only thing the Stocks object to regarding Judge Shaffer's recommendation to dismiss the charges against Officer Smith is to point out that "it is grave error to not considered [sic] the acts of not returning the seized properties such [as] the $1,200 cash, TomTom GPS, 9 mm pistol and camera without giving paperwork such as an inventory and receipt of the seized items." [ECF No. 37 ¶ 18.]

[7] The negligent supervision and assault claims are logically unconnected to Officer Smith's actions as alleged by the Stocks. General negligence and conversion are the only two that could arguably apply to this particular defendant.

## IV.   Conclusion

1. Judge Shaffer's Report and Recommendation [ECF No. 36] is ADOPTED IN PART.
2. Defendants' motion to dismiss [ECF No. 24] is GRANTED IN PART and DENIED IN PART.
3. Specifically, the motion is denied with respect to the argument that plaintiffs' state law claims are barred by the Colorado Governmental Immunity Act. However, the motion is granted for failure to state a claim upon which relief could be granted with respect to the claims against the supervisory and municipal defendants. Thus, all federal constitutional claims against defendants City of Aurora and Chief of Police Oates are dismissed with prejudice. Likewise, the motion is granted for failure to state a claim upon which relief could be granted against defendant Smith, and all claims against defendant Smith are dismissed with prejudice.
4. Therefore the following claims remain:
    a. Claims One through Four against all defendants except the City of Aurora, Chief Oates, and Officer Smith.
    b. Claims Five through Eight against all defendants except Officer Smith.

DATED this 24th day of April, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge